illegal. No permit to erect the bay windows has been proved, and their erection seems to have been unauthorized. If a permit had been proven, the powers of the common council in respect thereto would require examination, a course not now necessary. The bay-window encroachments, according to the evidence of the city surveyor, are of a substantial nature, two of the windows extending nearly six feet out from the house line. Incidental encroachments by bay windows or ornamental projections, not obstructing the passageway of the sidewalk, would hardly invoke criticism, much less action.

It clearly appears, therefore, that there is no equity in the plaintiff's bill, and that the commissioner of public works and the superintendent of the bureau of incumbrances cannot be enjoined from performing the duties incumbent upon them by law. To what extent they may go is matter that the court need not regulate. They are sworn public officers, and, inferentially, will perform their duties as the law requires. It is clear that they cannot be restrained from executing the duties the law commands them to perform.

For these reasons, the motion to continue the injunction must be denied, and the temporary injunction vacated, with $10 costs.

---

(13 Misc. Rep. 308.)

## WOOD v. THIRD AVE. R. CO.

(Circuit Court, Kings County. June 26, 1895.)

1. NEGLIGENCE—CONSTRUCTION OF STREET-CAR TRACK.

Defendant street-railroad company, in order to reach the cable by which its cars were moved, constructed manholes between the tracks, and covered them with iron plates. In the center of each cover was a circular hole, 1⅞ inches in diameter, for the purpose of lifting the cover. The method of construction of defendant's road was approved by the department of public works, and a permit issued for its construction in that way. *Held,* that defendant was not chargeable with negligence in respect to such covers because plaintiff's crutch slipped through the hole of one of them, causing plaintiff to fall, where it appeared that a large number of people passed over the manhole in question every day, and that no accident had ever happened before on account of the hole in the cover of that or any other manhole, though there were 1,200 of them on defendant's road.

2. SAME—USE OF HIGHWAY BY RAILROAD COMPANIES.

A railroad company which constructs its tracks in a street under municipal authority is not obliged to restore the street to such a condition as, under no circumstances, can any one be injured in using it, but its duty is simply to use reasonable care in restoring the street.

3. SAME—QUESTION FOR JURY.

In an action for personal injuries to a person passing along the street, alleged to have resulted from the improper method of construction of defendant's street-car track in such street, it will be held as a matter of law that defendant was free from negligence where it appeared that the construction complained of had proved safe and convenient in practice, and that no other accident had ever happened because of it, unless it is made to appear that the defect is one from which a reasonable man might anticipate injury.

Action by Thomas P. Wood against the Third Avenue Railroad Company. Defendant moves for a new trial on the minutes, after a verdict in favor of plaintiff. Granted.

Isaac M. Kapper, for plaintiff.
William N. Cohen and Henry L. Scheuerman, for defendant.

RUMSEY, J.    The Third Avenue Railroad Company operates a cable road in the city of New York, commencing somewhat south of the New York entrance of the Brooklyn bridge, and passing along the street immediately opposite the entrance, and on to the northern part of Manhattan Island.    For the convenient operation of the road, it is necessary that access should be had to the underground cables, by means of which the cars are moved.    This access is obtained by manholes, located at convenient places in the roadway, between the rails of the railroad.    These manholes are two feet nine inches square, constructed of plates of iron, of a thickness sufficient to carry the weight of any trucks or wagons which pass up and down the roadway, and consequently are of very considerable weight.    For the safe operation of the road, it is frequently necessary that access be had to the cable underground without delay, and, for that purpose, that the manhole covers may be speedily lifted as occasion required.    In order to lift them, there has been cast in the center of each cover a circular hole, $1\frac{1}{8}$ inches in diameter.    Underneath this hole, in each case, was a pit; so that anything getting into the hole would fall several feet before striking the bottom of the pit.    There are some 1,200 manholes thus covered.    On a day in April, 1894, the plaintiff, who lived in Brooklyn, had occasion, as was his daily custom, to go over the Brooklyn bridge, and cross the street upon which the defendant's tracks had been built.    He was at the time lame, so that he was obliged to use a crutch.    In crossing the street, by the defendant's track, his crutch went into one of the holes in the center of the manhole cover, and he was thrown to the ground, and severely injured, and brings this action to recover damages for the injuries he then received.    Upon the trial the plaintiff recovered a verdict, and the defendant now moves for a new trial, upon the judge's minutes.    At the close of the case, the defendant moved to dismiss the complaint, upon the ground, among others, that there was no evidence of any negligence on its part.    This is the only question which will be considered upon this motion.

It appeared that the defendant was authorized to build its tracks, and that the manner in which they were laid was approved by the department of public works of the city of New York, and a permit issued for their construction in that way.    Without such authorization, the defendant would undoubtedly have been a wrongdoer in interfering at all with the public highway, and would have been liable for any accident which happened because of its interference, without reference to the question of negligence.    Clifford v. Dam, 81 N. Y. 52.    The authorization and approval of the manner of doing its work relieved the defendant from the charge of maintaining a nuisance in the highway, and it became liable for interference with the highway only if it failed to use proper care and skill in the construction of the railroad which it was authorized to build and maintain thereon.    It was held in the case of Bellinger v. Railroad Co., 23 N. Y. 42, that one who had legislative authority for constructing

a railroad was liable only for such injury as resulted from the want of due skill and care in doing the work. But that case, while it carried the immunity of railroad companies further than had been before supposed to be the law, and further than was done by the cases in any other country, still held the party erecting the road liable for negligence in the manner of doing the work.

The question, then, is, was there evidence from which the jury might have found that the defendant was guilty of negligence in leaving a hole of this size in the manhole cover? Whether or not such a hole was absolutely necessary for the operation of the defendant's road was disputed, and the jury might, upon the testimony, have found that that manner of construction of the manhole cover, while it was convenient, was not indispensably necessary for the operation of the defendant's road, and might have been replaced by some other construction in which there would have been no hole of this kind. Upon this motion, it must be presumed that the jury did so find. The location of this manhole cover was immediately opposite the entrance to the Brooklyn bridge,—a place which, at all hours of the day, is thickly thronged with people, and over which, morning and evening, as many people pass as over any other part of the city of New York. It was made to appear that the number of people who pass over the Brooklyn bridge on foot, leaving the bridge in close proximity to this place, runs up into the millions yearly. Not only a great many of these people, but large numbers of other people, pass backward and forward over these manholes daily; and the number of people who went over the manholes of this construction along the length of the road of the defendant every day must have been exceedingly great. It was made to appear that not one accident had ever happened to any one of this great number of people on account of the existence of these holes in the covers. Upon this state of facts, the defendant insists that there is no sufficient proof of its negligence in constructing these covers in this way. In considering this question it must be borne in mind that the defect alleged is not a failure to keep in repair, but one of original construction. If these manhole covers had been constructed in some other way, and by long use the holes had become worn in them, it might fairly be insisted that, because the holes had not been put in the covers in the first place, they were not thought proper, and their existence created a defect which it was negligence to permit. This consideration takes the case out of the authority of several cases cited by the plaintiff, where a defect had come to exist because the construction was out of repair, and the defect was the direct cause of the accident. In such a case as that, presumably the original construction was proper and safe, and the fact that it was permitted to get out of repair, and develop a defect which caused the accident, is of itself evidence of negligence. Such were the cases of Fash v. Railroad Co., 1 Daly, 148, and Rockwell v. Same, 64 Barb. 438. So, also, this case is not to be governed by those in which the precise construction was prescribed by the statute; as in Humbert v. Cable Co., 12 N. Y. St. Rep. 172. In that case the law prescribed that the slot for the cable should be three-quarters of an inch wide. That dimension of the slot having

been prescribed by the statute, it was, by force of the statute, the proper and safe dimension to give to it.   Any increase of that dimension was a violation of the statute, and therefore, presumably, negligence.   Neither is this case like those in which the rail of the track was permitted to project above the street, without any planking upon the side of it, when it was made to appear that to put down such planking was the ordinary and usual mode of constructing a railroad track upon a highway; as was the case in Wasmer v. Railroad Co., 80 N. Y. 212.

In this case, as has been said, the hole was made in the cover as it was originally constructed; and the question then presents itself whether this original construction was unsafe, or whether the highway, as thus restored, was left in an unsafe condition.   The duty of a railroad corporation which interferes with a highway is to use reasonable care to restore it so as not to unnecessarily interfere with its usefulness.   But the corporation is not called upon to restore it to such condition as under no circumstances can harm come to one who uses it.   Its duty is simply to use reasonable care in that direction.   The corporation is entitled in building its road, in the first place, to erect in the highway, whatever is absolutely necessary to enable it to operate the road; and if such construction is made with proper care and skill, however inconvenient it may be to the rest of the community, it is damnum absque injuria.   Such is the plain holding of the case of Bellinger v. Railroad Co., supra, as interpreted by the long line of cases in which it has been considered.   But although that which is done by way of constructing the road is not absolutely essential, but only adopted as a more convenient appurtenance instead of some other mode of construction, which would be equally useful, it cannot be said that it is negligence to adopt that mode, unless some danger might have been apprehended from its use.   One is not guilty of negligence unless he omits to do something which a reasonable man would do, or does something which a reasonable man would not do.   Davis v. Winslow, 51 Me. 264.   It is said by Judge Grover that legal negligence is the omission of such care as persons of ordinary prudence exercise and deem adequate to the circumstances of the case.   In restoring the highway, it is the duty of the corporation to take into consideration the conditions that exist in that part of the highway where it has occasion to build its road, the extent of its use, the manner in which the road is to be built along or upon it, what is likely to happen in the place where it is to be built, the effect which any particular mode of construction will have upon its use, the danger to which the public will be exposed by the use of that mode of construction, how far a due regard for their safety will permit such a mode of construction to be adopted, and whether, upon the whole, such a mode of construction as is adopted will be sufficient for the purposes for which the highway is to be used.   One element to be taken into consideration is whether any accident is likely to happen from the particular mode of construction; and, if the mode is such that no accident is likely to occur from it, it is not negligence to adopt it.   In the case of Blyth v. Waterworks Co., 11 Exch. 781, it is said that negligence is

the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or the doing of something which a prudent and reasonable man would not do; and it is also said that a reasonable man would act with reference to ordinary circumstances. In that case, it having appeared that the act which was complained of as negligence was proper, having in view the conditions which usually existed, the court held that the verdict should have been ordered for the defendant. So, in the case of Gould v. Woolen Co., 147 Mass. 315, 17 N. E. 531, it was held that a manufacturer who used, in dyeing his cloths, a common mordant, which, so far as known, had never caused injury to any one merely handling cloths dyed with it, and which he did not know or suppose, and had no reason to know or suppose, to be injurious, was not liable to a purchaser injured by handling the cloth. The opinion in that case is a short one, but it refers, among other cases, to the case of Com. v. Pierce, 138 Mass. 168, in which, at pages 179 and 180, is found a discussion of the subject, which shows the views of the supreme court of Massachusetts. In this state it seems to be settled that any mode of construction, not absolutely dangerous, which has been in operation for a long time, and has uniformly proved adequate and safe, may be continued in use without the imputation of negligence. Ryan v. Railroad Co., 121 N. Y. 126, 23 N. E. 1131; Dougan v. Transportation Co., 56 N. Y. 1; Loftus v. Ferry Co., 84 N. Y. 455; Cleveland v. Steamboat Co., 125 N. Y. 299, 26 N. E. 327. In all these cases the rule seems to have been adopted that if the accident was one which could not reasonably have been anticipated, and which had never happened before, negligence cannot be predicated of the existence of the condition which brought about the injury. The same rule has been adopted in Massachusetts and by the court of exchequer in England, as appears from the cases cited above.

Applying this rule, it must be said that the defendant is not guilty of negligence in adopting this construction of the manhole cover, unless it is made to appear that injury to persons using the highway might reasonably be anticipated from such a mode of construction. It is a more serious question whether or not it should have been submitted to the jury to decide if such an accident might have been reasonably anticipated, or if that matter should have been disposed of as a question of law by the court. In each one of the cases cited above, the question was disposed of by the court. In the English case it was held that there should have been a nonsuit, and, without ordering a new trial, the verdict was directed for the defendants by the appellate court. In Gould v. Woolen Co., the court, at the trial, ordered a verdict for the defendant, for the reason that the facts which appeared did not warrant the finding of negligence, and the exceptions to that ruling were overruled by the supreme court. In the case of Ryan v. Railroad Co., 121 N. Y. 126, 23 N. E. 1131, the plaintiff was hurt by stepping between the car and the platform at an elevated railroad station. Because of a curve in the platform, there had been left a space of about eight inches between it and the car step, through which space the plaintiff fell. It appeared that

this space had been there ever since the construction of the elevated railroad; that during all that time it had proved to be safe, because thousands and thousands of persons had stepped over it without any danger; and that the plaintiff was the only person who ever had been injured by it.  The court of appeals, reversing a judgment for the plaintiff, held that those facts showed that there was no negligence in permitting such an opening to exist, and that the plaintiff should have been nonsuited.  The same thing was held in the case of Fox v. City of New York, 70 Hun, 181, 24 N. Y. Supp. 43, upon substantially the same state of facts.  The rule there laid down was that such an opening, over which many thousands of persons had daily passed, without inconvenience, was not negligence upon which recovery could be based.

The necessary inference from these cases is that, unless it has been made to appear that the defect was one from which a reasonable man might anticipate that injury might occur, the fact that the construction complained of had proved to be safe and convenient in practice, and that no other accident had ever happened because of it, requires the court to hold that there was no negligence, and to dispose of it as a question of law.  Negligence in such a case cannot be inferred from the mere happening of a single accident. It was error, therefore, to deny the motion of the defendant, to dismiss the complaint, and for that error a new trial must be granted.